[Crim. No. 16385. In Bank. Jan. 30, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
KENNETH RAY CHOJNACKY, Defendant and Appellant.

## COUNSEL

Chern & Sharpe, Chern, Sharpe, Farren & Kresse and Bruce Sharpe for Defendant and Appellant.

Evelle J. Younger, Attorney General, Herbert L. Ashby, Chief Assistant Attorney General, William E. James, Assistant Attorney General, S. Clarke Moore and Norman H. Sokolow, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BURKE, J.**—A jury found Kenneth Ray Chojnacky guilty of robbery and determined that the crime was of the first degree and that he was armed with a deadly weapon at the time of the offense. A prison sentence was imposed, and defendant appeals from the judgment.

Defendant contends that (1) under *United States* v. *Wade,* 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926], and *Gilbert* v. *California,* 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951], it was error to admit certain identification testimony and (2) prosecutorial misconduct requires a reversal of the judgment. We reject the first contention on the ground that the *Wade-Gilbert* exclusionary rule is inapplicable here since the instant lineup *preceded* the initiation of judicial criminal proceedings. We also reject the second contention, and we affirm the judgment.

On August 30, 1970, Dean Lipscomb was working alone at Jimmy's Service Station in Fontana. Around 10 that night two men approached him

and said they had run out of gas. Lipscomb had never seen either man before but offered to help them if they would wait until he closed up, and they agreed. Lipscomb went into the office, and the two men followed him. One of the men stuck a knife in Lipscomb's back and demanded money. Lipscomb handed to the robbers money from a cash box and a safe. The robbers took him into an adjoining room, and a discussion ensued regarding tying him up. He persuaded them not to do so, and the robbers eventually left. After they departed, Paul Davenport, who had observed two men walk into the service station, go into the office with Lipscomb, and come out by themselves and run, went to the station to investigate, and the police were called.

On the night of the robbery floodlights were on at the service station and lights were on inside. Lipscomb estimated that the robbers were probably there about 10 minutes. Davenport thought they were there not over four or five minutes.

"Some days" after the robbery the police showed Lipscomb about 500 photographs, and he picked out one of defendant and said it looked like one of the robbers although he could not make a positive identification from the photograph.[1] Thereafter Lipscomb identified defendant following a lineup on September 18, 1970, and again at the preliminary hearing. At the trial Lipscomb likewise identified defendant as one of the robbers and said that defendant was the one who held the knife. Davenport was unable to recognize either robber since they were too far from him.

The defense called as a witness Danny Lehman, who pleaded guilty to the instant robbery. Lehman testified that he committed the robbery and that the other robber was not defendant. He further stated that he was a friend of defendant's, that the other robber was named Ron, and that Lehman did not know Ron's last name or where to find him.

Defendant, testifying in his own behalf, denied committing the robbery and testified to an alibi. He stated: From about 3 p.m. on August 30 until around 5 the next morning he was at the house of a Miss Theda Davis and did not leave there during that period. A party was in progress at Miss Davis', and people were coming and going most of the night. Colin Nichols and other specified persons were at the party. Defendant did not know if he was in the living room the entire time Nichols was there. He knew the Ron referred to by Lehman and Ron's last name was Nelson or Neilson, but defendant did not have Ron's address. Defendant initially stated that he

---

[1]On the night of the robbery Lipscomb was shown about 200 photographs and did not recognize anyone in them. It does not appear that any of those photographs was of defendant.

knew Lehman and had seen him five or six times before August 30 at bars and other places, but thereafter when asked by the prosecution, "Aside from possibly in court somewhere, did you ever see [Lehman] anywhere?" defendant replied, "No."

Defendant's alibi was corroborated by Colin Nichols, who testified: He arrived at Theda Davis' house around 7 p.m. on August 30 and remained there until 12:30 the next morning, and defendant was there the entire time. It was possible someone could have gone out of or come into the kitchen door while Nichols was in the living room. There were about 10 or 12 at the party that night, and so far as he knew everybody who was there when he arrived stayed until he left. Jimmy's Service Station was about four miles from Miss Davis' house.

Defendant contends that for specified reasons he did not have the effective assistance of counsel at the lineup and that it was therefore error under the exclusionary rule of *United States* v. *Wade, supra,* 388 U.S. 218, and *Gilbert* v. *California, supra,* 388 U.S. 263, for the prosecution to introduce, over objection, (1) the lineup identification and (2) the victim's in-court identification in the absence of proof that it arose from a source independent of the lineup.[2] The attorney for each party has stipulated that the lineup *preceded* the initiation of judicial criminal proceedings.

*United States* v. *Wade, supra,* 388 U.S. 218, and *Gilbert* v. *California, supra,* 388 U.S. 263, held "that a *post-indictment* pretrial lineup at which the accused is exhibited to identifying witnesses is a critical stage of the criminal prosecution; that police conduct of such a lineup without notice to and in the absence of his counsel denies the accused his Sixth [and Fourteenth] Amendment right to counsel and calls in question the admissibility at trial of the in-court identifications of the accused by witnesses who attended the lineup." (Italics added; *Gilbert* v. *California, supra,* at p. 272 [18 L.Ed.2d at p. 1186].) *Wade* and *Gilbert* established a "per se exclusionary rule" as to in-court identifications if their source is a lineup conducted in violation of the foregoing constitutional standard and as to testimony of identification at such a lineup.

In *Kirby* v. *Illinois,* 406 U.S. 682 [32 L.Ed.2d 411, 92 S.Ct. 1877], five justices declined to extend the *Wade-Gilbert* per se exclusionary rule to identification testimony based on a police station showup that took place *before* the defendant had been indicted or otherwise formally charged with

---

[2]In view of the conclusion herein that the *Wade-Gilbert* exclusionary rule is inapplicable since the instant lineup *preceded* the initiation of judicial criminal proceedings, it is unnecessary to reach the issue whether defendant had effective assistance of counsel at the lineup.

any criminal offense. In *Kirby* the defendant and a companion had been arrested but not yet formally charged at the time of a police station confrontation of the suspects by the robbery victim. No lawyer was present, and neither suspect had asked for legal assistance or been advised of any right to the presence of counsel. At the trial the victim described his identification of the two men at the police station and identified them again in the courtroom as the men who robbed him.

Justice Stewart, who wrote the plurality opinion in *Kirby,* declared that since *Powell* v. *Alabama* (1932) 287 U.S. 45 [77 L.Ed. 158, 53 S.Ct. 55, 84 A.L.R. 527], "it has been firmly established that a person's Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him. . . . In this case we are asked to import into a routine police investigation an absolute constitutional guarantee historically and rationally applicable only after the onset of formal prosecutorial proceedings. We decline to do so. . . . The Due Process Clause of the Fifth and Fourteenth Amendments forbids a lineup that is unnecessarily suggestive and conducive to irreparable mistaken identification. *Stovall* v. *Denno,* 388 U.S. 293; *Foster* v. *California,* 394 U.S. 440 [fn. omitted]. When a person has not been formally charged with a criminal offense, *Stovall* strikes the appropriate constitutional balance between the right of a suspect to be protected from prejudicial procedures and the interest of society in the prompt and purposeful investigation of an unsolved crime." (406 U.S. at pp. 688, 690-691 [32 L.Ed.2d at pp. 417, 418-419].) Chief Justice Burger and Justices Blackmun and Rhenquist joined in the opinion by Justice Stewart, and Justice Powell concurred in the result on the ground that he "would not extend the *Wade-Gilbert* per se exclusionary rule."

Before *Kirby* this court in *People* v. *Fowler,* 1 Cal.3d 335 [82 Cal.Rptr. 363, 461 P.2d 643], held that the *Wade-Gilbert* rules were applicable to a formal pre-accusation lineup, and several California pre-*Kirby* decisions relied upon the conclusion in *Fowler.* (*People* v. *Banks,* 2 Cal.3d 127, 134 [84 Cal.Rptr. 367, 465 P.2d 263]; *People* v. *Martin,* 2 Cal.3d 822, 830, fn. 7 [87 Cal.Rptr. 709, 471 P.2d 29]; see *People* v. *Thomas,* 5 Cal.App.3d 889, 896 [86 Cal.Rptr. 97]; *People* v. *Smith,* 4 Cal.App.3d 41, 46 [84 Cal. Rptr. 229].) *Fowler* and the other California decisions were based on the federal Constitution and are not controlling in view of the decision rendered by the United States Supreme Court in *Kirby.* At least one California post-*Kirby* decision has followed the rule in *Kirby.* (*People* v. *Faulkner,* 28 Cal. App.3d 384, 390 [104 Cal.Rptr. 625].)

■ Since here the lineup preceded the initiation of judicial criminal

proceedings, the *Wade-Gilbert* per se exclusionary rule is inapplicable, and defendant's previously recited claims of error based on that rule therefore cannot be upheld. No claim is made, nor does it appear, that the lineup was unnecessarily suggestive and conducive to irreparable mistaken identification.

Defendant also contends that the prosecution was guilty of prejudicial misconduct during its examination of witnesses. On cross-examination of defendant by the prosecution the following colloquy occurred: "Q. Isn't it true before you were arrested . . . you told [the police] your name was something different? A. No. Q. That is not true? Didn't you tell them your name was Jerry Gertz? A. No, I didn't." No evidence was introduced or offered at the trial rebutting defendant's denial.

Defendant did not object to the above questions or urge that the matter constituted misconduct until the motion for a new trial, at which time he asserted that the prosecution's failure to prove or offer to prove the fact implied in the questions constituted prejudicial misconduct. The prosecution stated, ". . . If an offer of proof would help, I could make one now. *I certainly would be able to prove that particular fact.*" The court stated, ". . . I don't think an offer of proof at this time is going to cure it. *The probation report, of course, does bring out these matters, also that this was, in fact, done* but anything at this time wouldn't cure it. . . . [I]t did not result in prejudice to the defendant because the other evidence was overwhelming. . . ." (Italics added.)

The People contend that defendant cannot raise the claim of prosecutorial misconduct because no objection was made at the trial. ■ Generally misconduct of the prosecution will not be a ground for reversal of a judgment or the granting of a new trial where no objection was made. There are two exceptions to this rule. " 'One is where the case is closely balanced and there is grave doubt of defendant's guilt, and the acts of misconduct are such as to contribute materially to the verdict, a miscarriage of justice results requiring a reversal. . . . The other exception is where the act done or remark made is of such a character that a harmful result cannot be obviated or cured by any retraction of counsel or instruction of the court.' " (*People* v. *Perry,* 7 Cal.3d 756, 790 [103 Cal.Rptr. 161, 499 P.2d 129]; *People* v. *Perez,* 58 Cal.2d 229, 247 [23 Cal.Rptr. 569, 373 P.2d 617, 3 A.L.R.3d 946]; *People* v. *Lyons,* 50 Cal.2d 245, 262 [324 P.2d 556]; *People* v. *Berryman,* 6 Cal.2d 331, 337 [57 P.2d 136].)

The instant case does not come within the latter exception, since any harmful effect of the prosecutor's conduct could be obviated or cured by an appropriate admonition. Nor does the case come within the first exception.

Even if the case were viewed as closely balanced, it cannot be said that the asserted misconduct was such as to contribute materially to the verdict. The examination concerning whether defendant gave a false name at the time of his arrest was very limited, and the jury was instructed that it "must never speculate to be true any insinuation suggested by a question asked a witness. A question is not evidence and may be considered only as it supplies meaning to the answer."

Furthermore, it is doubtful that the above conduct of the prosecution constituted misconduct. ■ The term "misconduct" implies "a dishonest act or an attempt [by an attorney] to persuade the court or jury, by use of deceptive or reprehensible methods." (*People* v. *Beivelman,* 70 Cal.2d 60, 75 [73 Cal.Rptr. 521, 447 P.2d 913].) ■ It is improper to ask questions which clearly suggest the existence of facts which would have been harmful to defendant in the absence of a good faith belief that the questions would be answered in the affirmative, or with a belief that the facts could be proved, and a purpose to prove them, if their existence should be denied. (*People* v. *Perez, supra,* 58 Cal.2d 229, 241; *People* v. *Johnson,* 260 Cal. App.2d 343, 344 [67 Cal.Rptr. 122]; *People* v. *Lo Cigno,* 193 Cal.App.2d 360, 388 [14 Cal.Rptr. 354].) ■ Here the above italicized remarks of the court and prosecution at the time of the motion for a new trial suggest that the prosecution may have been acting in a good faith belief that defendant would respond in the affirmative.

■ Defendant also contends that the prosecution was guilty of misconduct in fluctuating between August 30 and 31 as the date of the robbery during examination of Lipscomb and Davenport.[3] Defendant notes that he presented testimony as to an alibi for August 30, 1970, and he asserts that the foregoing conduct of the prosecution constituted a "subtle attack on [his] alibi." No objection was made at the trial to the asserted misconduct, and it does not come within either exception to the rule requiring an objection. Any harm from the questions was not irreparable, and it cannot be said that the asserted misconduct contributed materially to the verdict. The information, which charged that the robbery was committed "on or about August 30, 1970," was read to the veniremen. Lehman testified that he and his companion committed the robbery on August 30, 1970, and it is

[3]The prosecution asked Lipscomb "How many people were working on that particular day of August 31, 1970?" and Lipscomb stated "Two." Thereafter the prosecution asked Lipscomb, "Now towards the end of your shift on that particular day, August 31 or August 30th, did you have a couple of gentlemen come in on foot?" and Lipscomb replied "Yes."

Later in the trial the prosecution asked Davenport, "Directing your attention to August 30th, I believe, of last year, possibly the 31st in the evening hours, were you in the area of that station?," and Davenport replied "I was."

unlikely that the testimony elicited from Lipscomb and Davenport by the questions now complained of would have misled the jury as to the date of the offense.

The judgment is affirmed.

Wright, C. J., and McComb, J., concurred.

**MOSK, J.**—I concur in the judgment.

*United States* v. *Wade* (1967) 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926], and *Gilbert* v. *California* (1967) 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951], required the presence of counsel at lineups under the frequently articulated theory that adversary criminal proceedings begin not in the courtroom but at the police station. (See, e.g., *Escobedo* v. *Illinois* (1964) 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758].) Justice Brennan, writing for the court in *Wade,* emphasized the importance of the presence of counsel at "critical confrontations," and firmly declared that "we scrutinize *any* pretrial confrontation of the accused" (italics in original; 388 U.S. at p. 227 [18 L.Ed.2d at p. 1157]). In addition, the court in *Stovall* v. *Denno* (1967) 388 U.S. 293, 298 [18 L.Ed.2d 1199, 1204, 87 S.Ct. 1967], stated unequivocally that "counsel is required at *all* confrontations" for identification (italics added).

Manifestly "any" pretrial confrontation and "all" confrontations for identification imply no limitation to post-indictment proceedings. Thus our court properly interpreted *Wade-Gilbert* to apply to every lineup, no matter when held. (*People* v. *Fowler* (1969) 1 Cal.3d 335, 342-344 [82 Cal.Rptr. 363, 461 P.2d 643].) It would seem obvious that if an accused is entitled to the protective presence of counsel at a lineup, the chronology of the lineup with respect to other proceedings is of no consequence.

I have heretofore expressed reservations concerning the role which attorneys may assume at lineups and have indicated its limitations (see my dissent in *People* v. *Williams* (1971) 3 Cal.3d 853, 858 [92 Cal.Rptr. 6, 478 P.2d 942]). But I have not doubted that *Fowler* is the law of California and remains so until this court declares otherwise.

I cannot agree with the majority that the plurality opinion in *Kirby* v. *Illinois* (1972) 406 U.S. 682 [32 L.Ed.2d 411, 92 S.Ct. 1877], merely "declined to extend the *Wade-Gilbert*" rule to pre-indictment lineups (*ante,* p. 763). It is clear to me that the recent decision materially changed the existing rule by strictly limiting to post-indictment proceedings the previously understood application of *Wade-Gilbert* and *Stovall* to "any" and

"all" confrontations for identification. This represents not mere procedure, but a substantive change in the law. As Judge Sobel states in his book, Eye-Witness Identification (1972), at page 33, "In practical effect the *Kirby* plurality has not only reversed *Wade's* counsel requirement but also *Wade's* principal salutary accomplishment." Indeed, as Sobel points out, now the right to counsel "is afforded the defendant where he least needs it." Post-indictment lineups are rarely held, and on occasions when they are used it is for the purpose of refreshing identifications previously made. The practicalities are that "The accused's fate will be decided not in a courtroom but in a showup staged in a police station before formal arrest and without counsel." (*Ibid.*)

The lineup in the instant case occurred after *Fowler* and prior to *Kirby*. The question before us, therefore, is not whether the federal rule of *Kirby* is to be interpreted as overruling the state rule of *Fowler,* but, even if *Kirby* should be deemed controlling, whether its substantive change is to be given retroactive application so as to affect a previously held lineup.

The answer is found in *Stovall* v. *Denno, supra.* Considering whether *Wade-Gilbert* should be deemed retroactive in application, the court found to do so would seriously disrupt the administration of our criminal laws (388 U.S. at p. 300 [18 L.Ed.2d at p. 1205]). The new requirement, said the court, was "not foreshadowed in our cases" (*id.* at p. 299 [18 L.Ed.2d at pp. 1204-1205]). If *Wade-Gilbert* was thus held to be only prospective in application, it would seem that *Kirby,* adopting a substantive change of law in the same field, should also be considered prospective only.

I repeat that I do not at this time reach the question of whether *Kirby* compels us to re-examine *Fowler*. It is not relevant to the issue before us, and is a subject that requires further briefing, argument and study.

Therefore, for the foregoing reasons I conclude that this case is controlled by *Fowler*. The question remaining is whether the procedures employed here violated *Fowler*. In my opinion, they did not. Counsel was in fact present throughout the staging of the lineup. His inability to consult with defendant prior to the lineup could in no way affect the basic fairness of the procedure or his observation thereof. As I pointed out in my dissent in *Williams* (3 Cal.3d at pp. 859-860), counsel has no right under *Wade-Gilbert* or *Fowler* to direct or participate in arranging the lineup. He is merely an observer, and can adequately fulfill that limited role despite lack of previous opportunity for consultation with his client. (*People* v. *Hatfield* (1969) 273 Cal.App.2d 745, 748 [78 Cal.Rptr. 805].)

Since there was compliance with the requirements of *Fowler,* I concur in affirmance of the judgment.

**SULLIVAN, J.**—I dissent.

I join with Mr. Justice Mosk in his conclusion that this case, in which the lineup occurred previous to *Kirby,* is controlled by the principles set forth in our decision in *People* v. *Fowler* (1969) 1 Cal.3d 335 [82 Cal.Rptr. 363, 461 P.2d 643]. I do not, however, agree with his further conclusion that the lineup in question was conducted in a manner consistent with those principles. On the contrary, I am of the view that the lineup in this case was violative of defendant's Sixth Amendment rights, that admission of evidence of his identification at the lineup was therefore error, and that that error compels reversal of the judgment herein because the People have failed to show beyond a reasonable doubt that it did not contribute to the verdict of guilt. (See *Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710, 87 S.Ct. 824, 24 A.L.R.3d 1065].)

The record in this case clearly shows that when the police informed defendant of the scheduled lineup and advised him of his rights, he declined to waive his right to counsel. The police then summoned a member of the public defender's office to represent him at the lineup. However, when the attorney appeared, the police authorities not only refused to allow him to consult with defendant beforehand *but also* refused to indicate to counsel which of the participants in the lineup was in fact defendant. The first of these refusals, approved by dictum in a decision of the Court of Appeal (*People* v. *Hatfield* (1969) 273 Cal.App.2d 745, 748 [78 Cal.Rptr. 805]), may be justified in circumstances where, as here, the attendance of counsel is secured at the defendant's request shortly before the lineup is scheduled to proceed. The second, however, is in my view wholly inconsistent with defendant's *Wade-Gilbert* rights and requires reversal in this case.

In *People* v. *Williams* (1971) 3 Cal.3d 853, at page 856 [92 Cal.Rptr. 6, 478 P.2d 942], we indicated that the *Wade-Gilbert* rules "were adopted for two primary reasons: to enable an accused to detect any unfairness in his confrontation with the witness, and to insure that he will be aware of any suggestion by law enforcement officers, intentional or unintentional, at the time the witness makes his identification." We held there that, although the presence of counsel at the lineup in that case "guaranteed that he would be able to detect any unfairness in the confrontation between appellant and the witness," the exclusion of counsel from the moment of actual identification "frustrated the second purpose of *Wade* and *Gilbert,* namely, to safeguard against the inherent risks of suggestion which are present at that time." (3 Cal.3d at p. 857.)

In the instant case, where counsel was afforded a complete opportunity to observe the moment of identification, we are not concerned with the

so-called "second purpose" of the *Wade-Gilbert* rules. Rather the question is whether counsel, by his mere presence at the lineup in this case, was provided an adequate opportunity to detect unfairness in the confrontation itself. I am of the view that he was not. The refusal of police authorities to indicate to counsel which of the participants in the lineup was in fact defendant rendered it difficult if not impossible for counsel to perform the task of observation and comparison which the *Wade-Gilbert* rules contemplate that he perform.[1] This refusal, in my opinion, was tantamount to a denial of the presence of counsel at the lineup.

I find apposite the following portion of the opinion of the Court of Appeal, authored by Presiding Justice Gardner for a unanimous court and reversing the judgment of conviction in the case at bench: "[I]t appears clear to us that for an attorney intelligently to be a 'silent observer' he should know what he is observing. At the very least, he should know who his 'client' is so that he may examine the other members of the lineup for indications of similarity and dissimilarity. Asking anyone to look at five or seven strange faces without knowing which face he is going to be called upon to compare with the others and subsequently testify as to similarities or dissimilarities is simply not reasonable. [¶] Therefore, we hold that the failure of the officer to identify the defendant to [counsel] resulted in an inadequate representation, i.e., no representation, therefore, evidence of the line-up was improperly presented."

I believe that this analysis is correct. Because the People have failed to show that the erroneous admission of evidence of the lineup was harmless beyond a reasonable doubt (see *Chapman* v. *California, supra,* 386 U.S. 18, 24) the judgment should be reversed.

Tobriner, J., concurred.

---

[1] Counsel, testifying at trial concerning the lineup, was asked by the court whether the participants in the lineup were "substantially similar in physical characteristics." Counsel replied: "Your Honor, it is impossible for me to answer the question since I didn't know which of the individuals in the lineup was the suspect. Consequently, it is difficult to determine which of them the other people are supposed to be looking similar to. This is one of the problems." Counsel further testified that he did not consider that he had adequately represented defendant at the time of the lineup.