Filed 8/24/15  P. v. Esquivel CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ROY ESQUIVEL,<br><br>    Defendant and Appellant. | D067446<br><br><br>(Super. Ct. No. RIF1209553) |

APPEAL from a judgment of the Superior Court of Riverside County, Mac R. Fisher, Judge.  Affirmed.

Jill M. Klein, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson, Lynne G. McGinnis and Kristine A. Gutierrez, Deputy Attorneys General, for Plaintiff and Respondent.

Roy Esquivel appeals a judgment following his jury convictions of sexual penetration by force (Pen. Code, § 289, subd. (a)(1)) and sexual battery (Pen. Code,

§ 243.4, subd. (a)). On appeal, he contends the trial court abused its discretion by admitting evidence of his prior uncharged sexual offense pursuant to Evidence Code[1] sections 1108 and 1101, subdivision (b).

## FACTUAL AND PROCEDURAL BACKGROUND

In 2000, Esquivel and Jane Doe 2 (Doe) began a relationship. They lived together in Arizona and had four children. In September 2011, they moved to California. In August 2012, they separated. Esquivel was unhappy about the relationship ending and Doe beginning a relationship with another man.

At about 7:30 p.m. on October 12, 2012, Doe went to Esquivel's home in Moreno Valley to drop off their children. She went inside and spoke with Esquivel's roommates, and then she and Esquivel went outside while the children remained inside. Doe and Esquivel discussed their daughter's health and then he began arguing with Doe about her new boyfriend. When she began to walk away, Esquivel told her not to leave and stated they needed to be together as a family. Doe told him he needed to understand their relationship was over. As she tried to walk away, he grabbed her arm.

Doe and Esquivel went to the backyard and he pinned Doe against the air conditioning unit. He kissed her on the mouth and face and she said, "No." He pulled her shirt down and began kissing her breasts. Doe told him to stop and tried to get away. She told him she had a boyfriend and did not want to be with him anymore, causing him

---

1    All further statutory references are to the Evidence Code unless otherwise specified.

2

to become angry. Esquivel put his hand down the front of her pants and inserted his fingers into her vagina. Although she pushed him and tried to get up, he continued to hold her down. She screamed, told him to stop, and tried to get away. When their young daughter walked outside, Esquivel stopped. When Doe told him she was going to call the police, he fled.

Doe called 911 to report the incident.[2] She stated Esquivel had forced himself on her, attacked her, and pulled off her pants. She explained she walked to the backyard with him. In the backyard, he attacked her, threw her on top of the air conditioning unit, and started to rip off her clothing. He would not stop even though she told him he was hurting her. He bit her neck. She explained that when their child heard her screaming and ran outside, Esquivel stopped. When Doe told him she was going to call police, he told her, "If you do, you're dead." She stated he was leaving in his car and was probably trying to get away. Afterward, Esquivel sent Doe several text messages apologizing for his conduct.

At about 9:00 p.m., Riverside County Sheriff's Deputy Joshua Little arrived at Esquivel's home and interviewed Doe.[3] Doe was crying and appeared very upset. She stated Esquivel grabbed her by the arm, dragged her into the backyard, and threw her against the air conditioning unit. She screamed, tried to get away, and told him to stop. He kissed her everywhere, bit her neck, and tried to pull her pants off. He pushed her

---

[2]    A recording of her 911 call was played for the jury.

[3]    A recording of that interview was played for the jury.

3

head down. He pulled her pants down to the middle of her thighs and put his fingers inside her vagina. She showed Little text messages she received from Esquivel and played a threatening voice-mail message she received from him the previous evening.[4]

Doe went to a hospital for a forensic examination. She described to the nurse events similar to those she had described to Little. Doe had suffered an abrasion and laceration to the posterior fourchette of her vagina, which injuries were consistent with forced digital penetration. She also had blood on her cervix and in her vagina. A swab taken from her left breast matched Esquivel's DNA profile.

The next day, when officers went to Esquivel's home to arrest him, he did not answer the door, but instead put his head out of a back upstairs window. Officer Little told him to go back inside and he was arrested.

While Esquivel was in a jail holding cell, he spoke with Doe 13 times and pleaded with her to help him get out of trouble. He denied kidnapping her, but did not deny holding her down against her will and digitally penetrating her vagina. He repeatedly asked her to change her story.

After Esquivel's release from jail, he and Doe continued to see each other and even lived together during Thanksgiving week in November 2012, during which time they had consensual intercourse once. After Esquivel returned to jail in December 2012, he called and spoke with Doe 54 times.

---

[4]    The voice-mail message was played for the jury.

An amended information was filed charging Esquivel with one count of kidnapping for purposes of sexual penetration (Pen. Code, § 209, subd. (b)(1)), one count of sexual penetration by force (Pen. Code, § 289, subd. (a)(1)), and one count of sexual battery (Pen. Code, § 243.4, subd. (a)).  At trial, the prosecution presented evidence substantially as described above.  Doe testified she followed Esquivel to the backyard and asked him for money, which contradicted what she had told Little and the forensic nurse.  Although she testified Esquivel did not use force to hold her down, she admitted he used his body weight to hold her down.  She remembered his hand inside her vagina and her grabbing his hand.  She also testified she did not scream because she did not want her children to hear.  Doe also testified about prior acts of domestic violence that Esquivel committed against her.

The prosecution presented the testimony of Jane Doe I (Doe I), Doe's niece, regarding a prior sexual offense Esquivel committed against her.  On January 25, 2009, Doe I, then seven years old, was playing at a park in Arizona with two of Esquivel's children.  Doe I went across the street to Esquivel's home to change the baby's diaper.  While in the bathroom, Doe I opened a drawer and saw nude photographs of Esquivel and Doe.  While Esquivel bathed the baby, he grabbed Doe I's wrist and asked her if she saw the photographs.  She said she had.  Later, Esquivel followed Doe I into another room and repeatedly told her to unbutton her pants.  She refused.  He then unbuttoned her pants, put his fingers on her vagina underneath her underwear, slowly pulled his fingers up, and asked her if she liked it and whether it felt good.  He pulled his pants down, grabbed her hand, and tried to get her to touch his penis.  When he asked her to touch it,

5

she said, "No."  She felt very scared.  They then went into the living room where Esquivel showed her the nude photographs she had seen in the bathroom.  Afterward, Doe I ran to her grandmother's house.  Doe I was crying and upset and told her mother she wanted to leave.  She eventually told her mother what had happened.  Doe I later told police what had happened, but Esquivel was never charged or prosecuted for his conduct regarding Doe I.  Doe I underwent counseling for about one year after the incident.

In Esquivel's defense, a neighbor testified he saw Doe and Esquivel walk together to the backyard as if there were no problem and did not hear any yelling or screaming from the backyard.  Esquivel also called Doe to testify.  She testified she told a defense investigator she and Esquivel walked to the backyard and started kissing, and she became angry with him when he did not have the money he said he would give her if she kissed him.  After the incident, she sent a text message to Esquivel, stating that if she was going to struggle, he was going to struggle behind bars.  Doe also testified she was aware of Doe I's allegations against Esquivel and that Doe I had told her he screamed at her after she went into his house to get a diaper and saw him naked.  He then told Doe I not to come into someone's house without knocking.

Esquivel's son testified he did not go into the house with Doe I on the day of the 2009 incident.  Doe I went to the house to get a diaper and when she returned a few seconds later, she was scared.

In rebuttal, the prosecution presented Little's testimony that Doe never told him she had kissed Esquivel.  Instead, she told him Esquivel kissed her all over without her permission while she was restrained on the air conditioning unit.  He listened to a

6

December 2012 telephone conversation in which Esquivel and Doe discussed an alleged statement by his attorney to his (Esquivel's) mother that if Doe stated the incident was consensual, the case would be dropped and he would be released. Esquivel told Doe, "It wouldn't work."

The jury found Esquivel guilty on counts 2 and 3 (i.e., sexual penetration by force and sexual battery). It could not reach a verdict on count 1 (i.e., kidnapping for purposes of sexual penetration). The trial court sentenced Esquivel to a total term of four years in prison, consisting of the low term of three years on count 2 and a consecutive one-year term on count 3. Esquivel timely filed a notice of appeal.

DISCUSSION

I

*Admission of Evidence on Prior Sexual Offense under Section 1108*

Esquivel contends the trial court abused its discretion by admitting under section 1108 evidence of his prior sexual offense.

A

Before trial, the prosecution filed an in limine motion for admission of evidence on Esquivel's prior sexual offense against Doe I pursuant to sections 1108 and 1101, subdivision (b). The motion described the 2009 incident substantially as Doe I subsequently testified at trial, but with certain discrepancies. The motion stated that after the incident, Doe I's mother saw the bottom button of Doe I's clothing was undone and her pants zipper was half-way down. Esquivel initially fled after police were called, but later spoke to police on the telephone and told them he was in his bedroom masturbating

7

when Doe I walked into his room and saw him. In September 2011, Doe contacted the investigating detective and reported that Esquivel had admitted to her that he touched her niece (i.e., Doe I). The prosecution argued the evidence on Esquivel's 2009 sexual offense was admissible pursuant to both section 1108 and section 1101, subdivision (b), and should not be excluded under section 352.

Esquivel filed a motion to exclude certain evidence, including evidence on his alleged 2009 child molestation of Doe I. He argued that evidence should be excluded under section 352 because of the dissimilarity of the 2009 incident with the instant incident and the unduly prejudicial and time-consuming nature of that evidence.

The trial court granted the prosecution's motion and denied Esquivel's motion, stating in part:

> "The case law the Court has reviewed supports admitting the [section] 1108 evidence involving this young child, despite the age difference she has with the victim in this case, who I believe is her aunt . . . .
>
> "The District Attorney also argues similarities between the acts involving the close relationship of the individuals involved, trust issues in both incidents.
>
> "It's also argued that force was used in the matter involving the seven-year-old victim, as it was allegedly used in this case. Fingers were forced into the victim's vagina, at least as alleged; and it's alleged that there's a similarity as to the seven-year-old child in that regard.
>
> "Both victims allegedly were isolated. And the defendant fled on both occasions.
>
> "In other words, because of the substantial similarity of the circumstances, the People allege that the uncharged conduct is probative. I think it's conceded the evidence is prejudicial. The

8

defendant argues it's inflammatory because of the child's age, particularly then seven, now ten, or 11.

"I've performed the [section] 352 analysis. I don't believe the evidence should be excluded, finding that the prejudice does not outweigh the probative value of this evidence."

The court further concluded the evidence on the 2009 incident was also admissible pursuant to section 1101, subdivision (b), as relevant to the issue of intent. At trial, Doe I testified regarding the 2009 incident as described above.

B

As a general rule, evidence of a defendant's prior bad acts is not admissible to prove his or her propensity or disposition to commit bad acts. (§ 1101, subds. (a), (b).) However, section 1108 creates an exception in cases of sexual offenses, providing: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352." (§ 1108, subd. (a); *People v. Nguyen* (2010) 184 Cal.App.4th 1096, 1115-1116 (*Nguyen*).) In *People v. Falsetta* (1999) 21 Cal.4th 903 (*Falsetta*), the California Supreme Court explained the legislative purpose of section 1108, stating:

> "[T]he Legislature enacted section 1108 to expand the admissibility of disposition or propensity evidence in sex offense cases. . . . [¶] Available legislative history indicates section 1108 was intended in sex offense cases to relax the evidentiary restraints section 1101, subdivision (a), imposed, to assure that the trier of fact would be made aware of the defendant's other sex offenses in evaluating the victim's and the defendant's credibility." (*Falsetta*, at p. 911.)

9

Admission of evidence of commission of other sex offenses is not limited to offenses for which the defendant has been criminally convicted, but may include evidence of defendant's uncharged prior sex offenses. (*People v. Yovanov* (1999) 69 Cal.App.4th 392, 404; *Nguyen*, *supra*, 184 Cal.App.4th at p. 1117; *People v. Dejourney* (2011) 192 Cal.App.4th 1091, 1104 (*Dejourney*).)

By its terms, section 1108 requires a trial court to exercise its discretion under section 352 before admitting or excluding evidence of prior sex offenses. Section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." The undue prejudice that "section 352 is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence." (*People v. Karis* (1988) 46 Cal.3d 612, 638.) "Rather, the statute uses the word [i.e., prejudice] in its etymological sense of 'prejudging' a person or cause on the basis of extraneous factors." (*People v. Farmer* (1989) 47 Cal.3d 888, 912.) *Falsetta* stated that in applying section 352 to decide whether to admit or exclude evidence of a defendant's other sexual offenses under section 1108, a trial court "must consider such factors as its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such

10

as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense." (*Falsetta*, *supra*, 21 Cal.4th at p. 917.)

On appeal, we review the trial court's admission of section 1108 evidence, including its section 352 weighing process, for abuse of discretion. (*People v. Miramontes* (2010) 189 Cal.App.4th 1085, 1097; *Dejourney*, *supra*, 192 Cal.App.4th at pp. 1104-1105.) "We will not find that a court abuses its discretion in admitting such other sexual acts evidence unless its ruling ' "falls outside the bounds of reason." [Citation.]' " (*Dejourney*, at p. 1105.) Alternatively stated, we will not reverse a trial court's exercise of its discretion under sections 1108 and 352 unless its decision was arbitrary, capricious and patently absurd, and resulted in a manifest miscarriage of justice. (*People v. Lewis* (2009) 46 Cal.4th 1255, 1286; *People v. Wesson* (2006) 138 Cal.App.4th 959, 969; *People v. Jennings* (2000) 81 Cal.App.4th 1301, 1314.)

C

Based on our review of the record, we conclude the trial court did not abuse its discretion by admitting evidence of Esquivel's 2009 sexual offense pursuant to section 1108. The trial court did not err by concluding that evidence was probative on the issue of whether Esquivel committed the instant alleged offenses against Doe. Because the willingness to commit a sexual offense is not common to most individuals, evidence of any prior sexual offense is particularly probative in determining the credibility of a witness. (*Falsetta*, *supra*, 21 Cal.4th at p. 912.) Evidence of a defendant's other sexual

offenses is presumed to be admissible under section 1108 to assist the jury in evaluating the victim's and the defendant's credibility. (*Falsetta,* at p. 911.)

As the People assert, there are certain similarities between the 2009 incident and the instant incident. The victims in both cases were not strangers to Esquivel. Doe was his ex-girlfriend and Doe I was Doe's niece, whom he had known for many years. Esquivel's conduct against both victims was similar. After initial, unsuccessful attempts to obtain consensual sexual contact, he forcibly pulled down each of their pants and forcibly touched their vaginas with his fingers. Furthermore, in both instances he did so in isolated locations (i.e., against Doe in the backyard and against Doe I in his home). Finally, in both instances Esquivel fled afterward and attempted to deny or minimize his actions. The evidence of his 2009 sexual offense against Doe I had substantial probative value on the question of whether Esquivel committed the instant sexual offenses against Doe.

Although Esquivel correctly notes there was a significant age difference between Doe and Doe I, that age dissimilarity did not require exclusion of the 2009 evidence or show a lack of its probative value. Many sex offenders are not "specialists" and commit a variety of sex offenses that may differ in specific character. (*People v. Soto* (1998) 64 Cal.App.4th 966, 984.) "[P]ersons with deviant sexual urges do not always limit their sex crimes to victims of the same age group." (*People v. Escudero* (2010) 183 Cal.App.4th 302, 306.) The jury could infer, based on the evidence of the 2009 incident and the instant incident, that Esquivel was a sexual offender who could, and would, commit sexual offenses against both women and girls.

Contrary to Esquivel's argument, the trial court did not abuse its discretion under section 352 by concluding the probative value of the evidence of his 2009 sexual offense was not substantially outweighed by the probability that its admission would create a substantial danger of undue prejudice. The court presumed that 2009 evidence would be prejudicial to Esquivel. Nevertheless, the court weighed its probative value against its probable prejudicial effect and concluded the evidence should not be excluded as *unduly* prejudicial. Neither Doe I's age at the time of the 2009 sexual offense (i.e., seven years old) nor the nature of that offense (e.g., lewd act or child molestation) was so inflammatory that the jury would not be able to rationally decide the instant charges against Esquivel based on the evidence against him at trial. Alternatively stated, the trial court did not abuse its discretion by concluding the jury would not decide to punish Esquivel for his prior 2009 sexual offense rather than for the instant offenses alleged against him. The court rationally concluded the probative value of the evidence of his 2009 offense showing his forcible touching of Doe I's vagina outweighed its inflammatory or prejudicial effect.

The trial court also rationally concluded the evidence of the 2009 sexual offense would not confuse the issues, was not cumulative, and would not be unduly time-consuming. First, there was no danger the jury would confuse the two incidents. Esquivel's offense in 2009 was against Doe I, a seven-year-old girl, and the instant charged offenses involved acts against Doe, an adult woman and his ex-girlfriend, in 2012. Second, the evidence was not cumulative. The court admitted evidence of only

13

one prior sexual offense committed by Esquivel.[5]  That evidence was not cumulative of the evidence regarding the instant charged offenses.  Finally, the evidence of his 2009 sexual offense was not unduly time-consuming.  The prosecution presented the testimony of Doe I and the Arizona investigating detective, which consisted of a total of 26 pages of the reporter's transcript.  Although Esquivel presented brief testimony from two witnesses regarding that 2009 incident (consisting of a total of about 16 pages) to refute the prosecution's evidence, the total trial time consumed on presenting evidence relating to that incident was not undue or excessive, especially when compared to its probative value.

Esquivel also argues the uncertainty of the commission of the 2009 sexual offense weighed against admission of evidence regarding that offense.  Although it is true Esquivel was not charged with any crime based on that offense, that does not preclude its admission.  Under section 1108, evidence on other sexual offenses are admissible in a case involving charges of new sexual offenses regardless of whether the defendant was charged with or convicted for those other sexual offenses.  (*People v. Yovanov*, *supra*, 69 Cal.App.4th at p. 404; *Nguyen*, *supra*, 184 Cal.App.4th at p. 1117; *Dejourney*, *supra*, 192 Cal.App.4th at p. 1104.)  Although a conviction for a prior sexual offense presumably would give a jury greater certainty of its commission, the jury in this case heard the testimony of Doe I regarding the 2009 incident and could have found that Esquivel had,

_____

5    The prosecution's in limine motion referred to other uncharged prior sexual offenses reportedly committed by Esquivel against two other children, but apparently chose not to seek admission of evidence on those other prior sexual offenses.

14

in fact, committed the prior sexual offense against Doe I. Accordingly, the trial court could rationally conclude the certainty of the commission of Esquivel's 2009 sexual offense against Doe I was sufficient to allow admission of evidence regarding it. Weighing all of the section 352 factors, the trial court did not abuse its discretion by concluding evidence of the 2009 sexual offense should not be excluded as unduly prejudicial and admitting that evidence under section 1108. *People v. Jandres* (2014) 226 Cal.App.4th 340 and the other cases cited by Esquivel are factually inapposite to this case and do not persuade us to reach a contrary conclusion.

## II

*Admission of Evidence of Prior Sexual Offense under Section 1101, Subdivision (b)*

Because we conclude the trial court did not abuse its discretion by admitting evidence on Esquivel's prior sexual offense under section 1108, we need not, and do not, address the issue of whether the court erred by admitting that evidence on the alternative ground of section 1101, subdivision (b).

## DISPOSITION

The judgment is affirmed.

McDONALD, Acting P. J.

WE CONCUR:

McINTYRE, J.

O'ROURKE, J.

15