Filed 9/7/22  P. v. Aluizo CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>CARLOS SANTANA ALUIZO,<br><br>    Defendant and Appellant. | F082352<br><br>(Super. Ct. No. 20CR-01109)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Merced County.  Jeanne Schechter, Judge.

James Bisnow, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein and Jennifer M. Poe, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

S.S. and her mother shared an apartment with appellant Carlos Santana Aluizo.  On two occasions, when her mother was at work, S.S. was alone with appellant, and he touched what she called her "lower parts."  On a third occasion, appellant placed a blanket over S.S.'s head, removed her pants and underwear, and she felt a sharp pain in

her vagina. A jury convicted appellant of sexual penetration of a child 10 years or younger (Pen. Code, § 288.7, subd. (b)), and two lewd acts against a child under 14 years (Pen. Code, § 288, subd. (a)). He was acquitted of sexual intercourse with a child 10 years or younger (Pen. Code, § 288.7, subd. (a)).

The trial court sentenced appellant to an indeterminate term of 15 years to life for the sexual penetration, plus a consecutive upper-term eight-year determinate sentence for the first lewd act, and a concurrent midterm six-year sentence for the second.

Appellant claims: (1) the trial court prejudicially erred by admitting evidence of appellant's two prior indecent exposure convictions (Pen. Code, § 314, subd. (1)) under Evidence Code section 1108;[1] (2) the trial court prejudicially erred by allowing the introduction of some of S.S.'s prior hearsay statements under section 1235; and (3) appellant was denied constitutionally effective assistance of counsel by trial counsel's failure to object to prosecutorial misconduct during the prosecutor's closing argument.

We affirm.

## FACTS

From August 2013 to May 2014, S.S. and her mother shared an apartment with appellant, his girlfriend, and her four-year-old son. S.S. was six years old when they moved in and turned seven in October 2013. About twice a week, mother left S.S. with appellant while she went to work. In May 2014, they moved out.[2]

Soon thereafter, mother learned for the first time that appellant had a prior history of inappropriate sexual incidents, including two prior convictions for indecent exposure. Mother asked S.S. several times whether anyone had touched her inappropriately when they lived with him, but S.S. "blew [her] off."

---

[1]  All further undesignated statutory references are to the Evidence Code.

[2]  The verdicts reflect the jury found the offenses in question to have occurred sometime between August 1, 2013, and May 31, 2014.

Five years later, in 2019, mother heard that S.S. had told a friend she had been molested, and mother contacted police. At trial, mother testified and described S.S.'s demeanor as being very depressed, with low self-esteem, and even at times being suicidal.

Thirteen-year-old S.S. testified at trial she knew appellant and that she and her mother had moved into the apartment where he lived when she was six years old. When her mother went to work, appellant would babysit her. There were times when she was alone with him, and he touched her "lower parts" with his hands.[3]

On one occasion, she explained, they were sitting on the couch in the living room watching a movie. Appellant began rubbing against her "lower parts" over her pajamas with his fingers. She thought he did this for "a really long time."

On another occasion, S.S. was again alone with appellant in the living room. Appellant "asked to see [her] body," and she complied because she was afraid of him. He told her to pull down her pants, which she did. He then started touching her vagina skin-to-skin. She said it was like he was massaging her. He stopped when appellant's girlfriend came home.

On a third occasion, S.S. was alone with appellant in the master bedroom, and no one else was at home. While she was lying on the bed, appellant put a blanket or towel over her face, and pulled down her pants and underwear; he was standing near the bed and her upper body was on the bed with her lower body hanging over the edge. She said she suddenly felt a "sharp pain" in her vagina. She was scared and did not know what was going on, and said she called out for her mother. Eventually, the covering was removed from her face, and she said she saw appellant standing nearby, wearing no pants

---

**3** S.S. explained that by "lower parts" she meant her vagina. She also referred to it as the "hole."

or underwear, and she could see his penis. She ran to the bathroom, and the sharp pain continued afterwards. Appellant told her not to tell anyone what had happened.

After they had moved out of the apartment, S.S. said her mother asked her about five or six times if appellant had ever touched her. But she denied it because she was afraid; she felt like it was her fault because she did nothing to stop him. In 2019, S.S. finally told her best friend what had happened, and eventually she told her mother and sister.

Maria Moreno from the county social services agency interviewed S.S. while a police officer watched from an adjoining room. The officer testified at trial that during the interview, S.S. told Moreno about the incident in the living room where appellant touched her, skin to skin, after her clothes were removed. As for the incident in the master bedroom, S.S. said appellant took her to the bed and put a blanket over her from the waist up. After the blanket was removed, S.S. said she saw appellant had his pants and underwear off, and that she could see his penis, which appeared hard. S.S. told Moreno she believed his penis had been in her vagina, not his finger, and that it felt hard.

The parties stipulated appellant was convicted of misdemeanor indecent exposure in March 2004, and an April 2006 felony indecent exposure with a prior.

Appellant chose not to testify, and the defense presented no evidence.

## DISCUSSION

I.    **Admissibility of Appellant's Prior Convictions (§ 1108)**

Appellant first contends the trial court prejudicially erred by admitting evidence of his two prior indecent exposure convictions pursuant to section 1108. We disagree.

A.    *Additional Background*

Prior to trial, appellant brought a motion to exclude his prior indecent exposure convictions, while the prosecutor moved to admit them.[4]

---

[4]    The facts behind the 2004 misdemeanor conviction were unknown, but in the 2006 felony case, appellant drove up to a 17-year-old girl who was walking to a bus stop, and

4.

The trial court granted the prosecutor's motion, concluding the offenses were of the same class and were relevant propensity evidence.

> "[The Court:] And the Court also notes that the intent or the purpose or motivation behind charges involving [Pen. Code, §] 288 or [Pen. Code, §] 314 are very similar. They're committed with the intent to arouse, appeal, or gratify the lust, passions, or sexual desires of the defendant or the child. That's how 288 reads. And then a 314, the purposes for sexually arousing or gratifying himself, or another person, or offending another person. [¶] The Court finds that, at least the factual recitation, the 2006 incident, was certainly more than just being a flasher. This was an incident which he exposed hisself [sic] to a minor who was 17 at the time, and she reported that he was actually stroking himself during the incident, so that's more serious conduct than somebody's [sic] who's just doing what we commonly refer to as 'flashing.' "

The court found the two priors were not too remote in time, and that because appellant had been convicted of the offenses, not merely accused, "the jury will not be distracted by speculating whether he was guilty, or whether he should be punished" for them. For the same reasons, "there's not going to be any undue consumption of time." The court further noted both the prior convictions and the charged offenses were sex offenses specifically listed in section 1108, and that the 2006 offense also was relevant to appellant's motivation for the charged offenses.

In weighing the prejudicial impact of the priors against their probative value under section 352, the court noted there was no burden on appellant to defend against uncharged prior offenses for which he had not been convicted. Similarly, the parties had agreed to admission of the convictions by stipulation, which was far less prejudicial and time consuming than live testimony. Furthermore, the court noted Penal Code section 314 is not a particularly inflammatory offense in and of itself and does not involve physical violence. Thus, "under all the circumstances, the Court does find that the

_____

asked if she wanted a ride. As he did so, he was stroking his exposed erect penis. However, only the convictions were entered into evidence, via stipulation, and the jury was unaware of the underlying facts of either case.

probative value of admitting the two prior [Penal Code section] 314 convictions does outweigh any prejudicial impact it may have on the jury, and I will allow admissions [*sic*], uncharged misconduct."

### B.    Analysis

"As a general rule, 'propensity evidence is not admissible to prove a defendant's conduct on a specific occasion.' " (*People v. Dworak* (2021) 11 Cal.5th 881, 899 (*Dworak*).)  "But [] section 1108, subdivision (a) provides an exception to this rule:  'In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352.' " (*Ibid.*)[5] In this context, the term "sexual offense" includes an offense proscribed by Penal Code section 314.  (§ 1108, subd. (d)(1)(A).)

"[E]vidence of a 'prior sexual offense is indisputably relevant in a prosecution for another sexual offense.' " (*People v. Branch* (2001) 91 Cal.App.4th 274, 282–283.) "With the enactment of section 1108, the Legislature 'declared that the willingness to commit a sexual offense is not common to most individuals; thus, evidence of *any prior sexual offenses* is particularly probative and necessary for determining the credibility of the witness.' " (*People v. Soto* (1998) 64 Cal.App.4th 966, 983, italics added.)

" 'In short, if evidence satisfies section 1108, and is not excluded under section 352, admission of that evidence to prove propensity is permitted.' " (*Dworak*,

---

[5]    Section 1101, subdivision (a) provides:  "[E]vidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion."

Section 352 provides:  "The court in its discretion may exclude evidence if its probative value is *substantially outweighed* by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."  (Italics added.)

*supra*, 11 Cal.5th at p. 899.)  Thus, appellant's uncharged indecent exposure convictions were presumptively admissible.  (*People v. Yovanov* (1999) 69 Cal.App.4th 392, 405 ["evidence of uncharged sexual offenses is so uniquely probative in sex crimes prosecutions it is presumptively admissible"].)[6]

We review a trial court's ruling under section 1108 for abuse of discretion. (*People v. Daveggio and Michaud* (2018) 4 Cal.5th 790, 824.)  Similarly, "[a]s a reviewing court, we accord deference to a trial court's determination that the probative value of a particular piece of evidence outweighs any danger of prejudice." (*Dworak*, *supra*, 11 Cal.5th at p. 899; see *People v. Miles* (2020) 9 Cal.5th 513, 587, 587–588 (*Miles*)  [" '[T]he court has broad discretion under Evidence Code section 352' " and reviewing courts " ' "will not disturb a trial court's exercise of discretion under Evidence Code section 352 ' "except on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice." ' " ' "].)

Our Supreme Court has "instructed that the trial court's determination should be guided by such factors as the 'nature, relevance, and possible remoteness' of the evidence, 'the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the

---

[6]   Cf. *People v. Loy* (2011) 52 Cal.4th 46, 63 [" '[T]he charged and uncharged crimes need not be sufficiently similar that evidence of the latter would be admissible under Evidence Code section 1101[, subd. (b)], otherwise Evidence Code section 1108 would serve no purpose.  It is enough the charged and uncharged offenses are sex offenses as defined in section 1108.' "]

defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense.' " (*Dworak*, *supra*, 11 Cal.5th at p. 900.)

Here, the record shows the trial court considered all these factors in making its ruling and appellant does not contend otherwise. Instead, he focuses on what he calls the "glaring dissimilarities" between the prior convictions and the current offenses. And in support, he cites *People v. Earle* (2009) 172 Cal.App.4th 372 (*Earle*), and argues it "should control the result here." We disagree.

In *Earle*, the defendant was charged in two separate cases, one with misdemeanor indecent exposure and the other with assault with intent to commit rape. (*Earle*, *supra*, 172 Cal.App.4th at p. 378, 384; see Pen. Code, § 220.) After the cases were consolidated for trial, the trial court denied defendant's motion to sever. (*Earle*, *supra*, 172 Cal.App.4th at p. 378.) As a result, this was not a matter of using prior convictions as propensity evidence because the unadjudicated indecent exposure charge was being tried along with the assault.

The issue on appeal was the denial of the severance motion. In finding error, the appellate court concluded, among other things, that the evidence supporting the indecent exposure offense would not be cross-admissible under section 1108 to show a propensity to commit an assault with intent to rape because, without expert testimony, an indecent exposure offense had no tendency in reason to show the defendant had the propensity to commit rape. (*Earle*, *supra*, 172 Cal.App.4th at pp. 397–398.)

Unlike *Earle*, this case involves a section 352 weighing, not a severance motion denial. "Not only is the burden allocated differently in cases involving properly joined charges as compared with cases involving the introduction of uncharged misconduct, but the nature of the abuse of discretion standard—and the ensuing method utilized to analyze prejudice, undertaken to determine whether a trial court abused its discretion in a specific case—also are *significantly different* from what is employed in determining whether a trial court erred in allowing the introduction of evidence of uncharged

misconduct." (*People v. Soper* (2009) 45 Cal.4th 759, 774, italics added.) In a severance motion, "[t]he burden is on the party seeking severance to clearly establish that there is a substantial danger of prejudice requiring that the charges be separately tried. [Citations.] When the offenses are [properly] joined for trial the defendant's guilt of all the offenses is at issue and the problem of confusing the jury with collateral matters does not arise. The other-crimes evidence does not relate to [an] offense for which the defendant may have escaped punishment. That the evidence would otherwise be inadmissible may be considered as a *factor* suggesting possible prejudice, but countervailing considerations that are not present when evidence of uncharged offenses is offered must be weighed in ruling on a severance motion. The burden is on the defendant therefore to persuade the court that these countervailing considerations are outweighed by a substantial danger of undue prejudice." (*People v. Bean* (1988) 46 Cal.3d 919, 938–939, italics added.)

More importantly, appellant conflates the sex offenses involved in the present case and those in the *Earle* case as both being ones of "sexual assault." Thus, appellant describes *Earle* as holding that "the fact a person commits the crime of indecent exposure ha[s] no 'tendency in reason' to show that such a person harbors a propensity to commit *sexual assault*." (Italics added.) This is literally true, of course, because the defendant in *Earle* was actually charged with *assault* with intent to commit rape. The relevant mens rea in such a case is a specific intent to commit an act of rape without the consent of the victim. (See *People v. Davis* (1995) 10 Cal.4th 463, 509 [" 'essential element' " of assault with intent to commit rape is " 'the intent to commit the act against the will of the complainant' "]; see also CALCRIM No. 890.)[7]

In contrast, indecent exposure is a different offense, with a completely different mens rea. Thus, "[e]very person who *willfully and lewdly* … [¶] [e]xposes his person, or

---

[7]     In turn, rape is an act of unconsented, unlawful sexual intercourse (see Pen. Code, § 261), and is a general intent crime. (*People v. Griffin* (2004) 33 Cal.4th 1015, 1022.)

9.

the private parts thereof, in any public place, or in any place where there are present other persons to be offended or annoyed thereby" has committed the offense of indecent exposure. (Pen. Code, § 314, subd. (1), italics added.) The mentes reae are strikingly distinct: an assault to commit rape does not require a lewd intent, and an indecent exposure does not require either an assault or an intent to commit a rape. Consequently, the *Earle* court concluded the intent elements of the two offenses were so different that any attempt to draw a propensity inference from one to the other would be too speculative without expert testimony. (*Earle*, *supra*, 172 Cal.App.4th at pp. 399–400.) And when limited to its facts and the severance motion context, the *Earle* court's conclusion is not unreasonable.

Here, however, appellant was convicted of violating Penal Code sections 288, subdivision (a), and 288.7, subdivision (b). For the lewd act counts, the prosecutor was required to prove that appellant "committed the act[s] with *the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires* of himself or the child." (CALCRIM No. 1110, italics added.) Similarly, for the sexual penetration count, appellant must have "engaged in an act of sexual penetration with [S.S.]." (CALCRIM No. 1128.) And sexual penetration "means penetration, however slight, of the genital or anal opening of the other person by any foreign object, substance, instrument, or device, or by any unknown object *for the purpose of sexual abuse, arousal, or gratification.*" (*Ibid.*, italics added; see Pen. Code, §§ 288.7, subd. (b), 289, subd. (k)(1) (2), & (3).)[8]

---

[8]    "An *unknown object* includes any foreign object, substance, instrument, or device, or any part of the body, including a penis, if it is not known what object penetrated the opening. [¶] A *foreign object, substance, instrument, or device* includes any part of the body except a sexual organ." (CALCRIM No. 1128.) "A finger is a 'foreign object' within the meaning of [Pen. Code, § 289]." (*People v. Adams* (1993) 19 Cal.App.4th 412, 428, disapproved on other grounds in *People v. Chhoun* (2021) 11 Cal.5th 1, 38 (*Chhoun*); *People v. Wilcox* (1986) 177 Cal.App.3d 715, 716.)

Indecent exposure has a similar mens rea, and to be convicted of that offense, a defendant must expose him or herself "lewdly by intending to direct public attention to (his/her) genitals for the purpose of *sexually arousing or gratifying* (himself/herself) or another person, or sexually offending another person." (CALCRIM No. 1160, italics added; see *In re Smith* (1972) 7 Cal.3d 362, 366 [nude sunbathing on an isolated beach is not lewd conduct; defendant must "intend[] by his conduct to direct public attention to his genitals for purposes of sexual arousal, gratification, or affront"].)

Thus, unlike in *Earle*, the commonality of the relevant mental states in the case before us is manifest; indeed, that is likely why the Legislature included indecent exposure along with Penal Code sections 288 and 288.7 in its definition of sexual offenses for purposes of section 1108. (See § 1108, subd. (d)(1)(A) & (C).)

Appellant also argues "the prosecution offered no evidence that a person who exposes himself likely will commit violent sexual offenses in the future," again citing *Earle*. However, neither the text of section 1108, nor its underlying legislative intent, even remotely suggest such an evidentiary foundation is required.

To the extent *Earle* concludes categorically that an indecent exposure conviction is irrelevant to prove a different sexual offense without supporting expert testimony, we disagree. We find no reason in law or policy to apply such an uncompromising approach to the admissibility of evidence determinations under section 1108.**9** To do so would usurp the trial court's discretion to make case-by-case relevance determinations based on

---

**9** We also find it significant that in *Earle*, the *defense* had presented expert evidence at the severance motion that exhibitionists are not likely to commit rape, and the prosecution failed to counter with evidence that exhibitionists are likely to commit rape. (*Earle*, *supra*, 172 Cal.App.4th at p. 420 (dis. opn. of Mihara, J.).) From that perspective, the court majority concluded the indecent exposure evidence was therefore not relevant to show a disposition to commit rape. (*Ibid.* (dis. opn. of Mihara, J.).) Even so, "[t]he defense expert's declaration did establish that it was more likely that an exhibitionist, as opposed to a nonexhibitionist, would commit rape." (*Id.* at p. 421, fn. 6 (dis. opn. of Mihara, J.).)

11.

the nature, circumstances, and details of a defendant's prior sexual offenses and the charged sexual offenses.

Moreover, requiring a battle of the experts to establish the relevance of different sexual offenses to one another in every case would abrogate section 1108's underlying rationale to make prior sexual offenses more easily admissible in subsequent sexual offense prosecutions, not harder. (See *People v. Falsetta* (1999) 21 Cal.4th 903, 911 [§ 1108 "was intended in sex offense cases to *relax the evidentiary restraints* section 1101, subdivision (a), imposed, to assure that the trier of fact would be made aware of the defendant's other sex offenses in evaluating the victim's and the defendant's credibility" (italics added)].)

We do not suggest expert testimony may never be necessary to help establish relevance between different sexual offenses; rather, only that such determinations should be left to the traditional discretion of the trial court and based on the individual facts of a given case rather than to a sweeping general rule. The *Earle* court determined indecent exposure and assault with intent to commit rape were too dissimilar, based on the facts in that case, to satisfy section 1108 for purposes of a severance motion. We are unwilling to go beyond that fact-based holding and require an additional expert witness evidentiary hurdle in all section 1108 cases that finds no support in the statute or its underlying intent.

We need not decide whether *Earle* was correctly decided, because it is distinguishable. And as such, appellant's reliance on *Earle* is therefore misplaced.[10]

---

**10**    So too with *People v. Jandres* (2014) 226 Cal.App.4th 340, also cited by appellant, where the "inquiry [was] whether evidence that defendant exhibited sexual interest in an 11-year-old girl by putting his finger in her mouth [during an attempted kidnapping] rationally supports an inference that defendant was predisposed to rape an 18-year-old woman." (*Id.* at p. 356.) Deciding it did not, the court noted the differences in intent and the ages of the victims. (*Ibid.*) And although the *Jandres* court cited *Earle* in its opinion, it was not because of a lack of expert testimony, but instead because the

Furthermore, even assuming *Earle*'s discussions may be "*relevant* to the trial court's exercise of discretion, … they are not enough to show that the trial court abused its discretion." (*Dworak*, *supra*, 11 Cal.5th at p. 902, italics added.)

As discussed, *ante*, a trial court enjoys broad discretion in assessing whether the probative value of particular evidence is outweighed by concerns of undue prejudice, confusion, or consumption of time. (*Miles*, *supra*, 9 Cal.5th at pp. 587–588.) For purposes of section 352, "prejudice" means " 'evidence that *uniquely* tends to evoke an emotional bias against a party as an individual, while having only slight probative value with regard to the issues.' " (*People v. Heard* (2003) 31 Cal.4th 946, 976, italics added.) There was no such prejudice here.

The prior 2004 and 2006 indecent exposure convictions: (1) were not highly inflammatory in comparison to the more serious charged sex crimes; (2) were not likely to distract or confuse the jurors from their main inquiry or consume undue time because the evidence was admitted in the form of a brief stipulation devoid of any inflammatory details; (3) did not impose an undue burden on defendant in defending against the uncharged offense because they were convictions; and (4) were not so remote in time as to drastically reduce the likelihood of a propensity to commit the charged offenses.

In sum, nothing in the record before us establishes the " ' " ' "court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice" ' " ' " in its section 1108 ruling. (*Miles*, *supra*, 9 Cal.5th at p. 588.) Because we find no section 1108 error, we need not and do not address the parties' arguments regarding prejudice.

---

court simply found the prejudicial effect of the prior conduct outweighed its probative value. (*Id.* at p. 357.)

13.

## II. Admissibility of S.S.'s Prior Statements (§ 1235)

Appellant next claims the trial court prejudicially erred by permitting the prosecutor to introduce some of S.S.'s prior hearsay statements pursuant to section 1235. Again, we disagree.

### A. Additional Background

Regarding the penetration charge, S.S. testified appellant put a blanket or towel over her face, pulled down her pants and underwear, and she "could feel him rubbing something against it." She felt something on her "lower part," but she did not "know how to describe it." When asked if she felt "something, like, on your body, or in your body?" she replied, "Yes." She said she felt a "sharp" physical pain in her "lower part" and called out for her mother, adding that the pain continued afterwards.

The prosecutor asked: "When you felt the sharp pain in your vagina in the master bedroom, could you feel something touching you, or going inside of you?" and S.S. replied, "Yes." The prosecutor later asked her a similar question: "[S]o the pain you felt in your vagina, could you feel any kind of description of what the object felt like, or what was causing the pain to you," and S.S. replied, "I don't remember." After refreshing her recollection with her preliminary hearing testimony, S.S. said appellant used his penis to touch her vagina.[11]

On cross-examination, S.S. admitted she had told Moreno during her interview that she felt a pain in her vagina but did not see what was going on. But she said she did not remember whether, during her preliminary hearing testimony, she had stated that she did not see appellant's penis. With her memory refreshed with the prelim transcript, she acknowledged she had testified she did not see appellant's "private parts."

On redirect, the prosecutor then elicited the following:

---

[11] S.S. identified an exhibit from the preliminary hearing, which depicted a male figure with a green circle drawn around his penis, as having been made by her at that hearing. It was also admitted into evidence at trial.

"[Prosecutor:] [D]uring the master bedroom incident that you have described for us today, you said that you felt pain. Was the pain inside or outside of your body?

"[S.S.:] I don't remember.

"[Prosecutor:] When you were interviewed in January of this year by the woman, you—when asked about that pain, you said that it was lower part of it, referring to the hole. Do you remember that?

"[S.S.:] Oh, yeah. Yeah.

"[Prosecutor:] Could you explain that to us.

"[S.S.:] What do you mean?

"[Prosecutor:] Well, when you say 'lower part of it,' referring to the hole, what part of your body do you take that to mean?

"[S.S.:] I don't understand.

"[Prosecutor:] When you were interviewed back in January by the woman, she was asking you about the pain you felt in the master bedroom and you mentioned the lower part of it referring to the hole.

"[S.S.:] Yeah.

"[Prosecutor:] What part of your body are you talking about when you say that to the interviewer?

"[S.S.:] My vagina."

Later, the police officer who had watched the interview testified regarding what S.S. said about the blanket incident, and was asked:

"[Prosecutor:] Did [S.S.] describe what the touching felt like?

"[Defense counsel]: Objection. Hearsay.

"THE COURT: Overruled. This goes to impeachment.

"[Officer:] She described it as—she didn't believe that it was his finger and described it as very painful. And based on the way she was

15.

describing it, she was—she believed that it was, in fact, his penis that was in her vagina and not his finger."

Later, defense counsel clarified: "Regarding my earlier hearsay objection, when [the prosecutor] was doing her direct examination of [the officer], I'm specifically referring to any—any testimony that was admitted when [S.S.]'s answer was 'I don't remember.' I believe it's improper impeachment for hearsay to come in through [the officer] based on an I-don't-remember-answer. However, if it was a different contradicting statement other than I don't remember, I agree that is proper impeachment."

The prosecutor responded: "My recollection of her testimony was that she denied the things that I asked [the officer] about that she denied them in her testimony, or gave inconsistent testimony whether her memory—let me be clear. She either testified inconsistently, or gave inconsistent statements in her testimony that I think that was the foundation that's proper to bring it in through [the officer]. Even if in her own testimony she agreed she said that to the interviewer, I can still bring in that hearsay through [the officer] and everything that she was asked about she was confronted with when she testified."

The court ruled: "[T]he testimony is just going to stand as it is. It was kind of, as I said all, over the place. She testified at times she remembered things, didn't remember things. She confirmed things she said. And the way—the way the questions were asked when she was testifying, it was, in all honesty, somewhat confusing to me. So the testimony stands."

### B.    Analysis

Section 1235 codifies the hearsay exception for a witness's prior inconsistent statements: "A statement inconsistent with a witness's trial testimony 'is not made inadmissible by the hearsay rule' [citation] so long as the witness either had 'an opportunity to explain or to deny the statement' while testifying or has not been excused from giving further testimony [citation].… Prior inconsistent statements admitted under

16.

[] section 1235 may be considered for their truth as well as for impeachment." (*Chhoun*, *supra*, 11 Cal.5th at p. 44.)

We review a trial court's decision to admit or exclude a hearsay statement under section 1235 for abuse of discretion. (*Chhoun*, *supra*, 11 Cal.5th at p. 44 [" '[A] trial court has broad discretion to determine whether a party has established the foundational requirements for a hearsay exception.' "].)

Here, S.S. had several opportunities during her testimony to explain or deny the statements she made during her social services interview, both at trial and at the preliminary hearing, and both attorneys examined her in detail. Moreover, although S.S. had left the witness stand when the section 1235 discussion ensued, she was subject to recall and the trial court had not excused her.

" ' "Generally it is true that the testimony of a witness indicating that he or she does not remember an event is not inconsistent with a prior statement describing the event. [Citation.] 'But justice will not be promoted by a ritualistic invocation of this rule of evidence. Inconsistency in effect, rather than contradiction in express terms, is the test for admitting a witness'[s] prior statement [citation], and the same principle governs the case of the forgetful witness.' " ' " (*People v. Thomas* (2017) 15 Cal.App.5th 1063, 1075–1076.) Thus, a victim's testimony she did not remember one particular act of oral copulation by the defendant when she was younger than eight years old was inconsistent "in effect" with her prior statements to a detective where she had provided earlier dates of oral copulation. (*Id*. at p. 1076.)

Similarly, in *People v. Hovarter* (2008) 44 Cal.4th 983, 1008, a detective's testimony recounting a sexual assault victim's prior statement that the defendant told her this " 'wasn't the first time he had done this and that he knew what to do' " satisfied section 1235 when at trial she did not "remember" if the defendant " 'said specifically that he had done it before.' " There, the court also noted: "Of course, dealing with a

17.

sexual assault victim's memory of the traumatic event can be a delicate matter and one committed to the trial court's discretion." (*Ibid.*) So too here.

Appellant relies on *People v. Sam* (1969) 71 Cal.2d 194 for a rule that "a witness's trial testimony that she does not remember an event is not inconsistent with a prior statement describing the event" for purposes of section 1235, and argues the trial court therefore erred by allowing the officer to testify to S.S.'s prior statements to Moreno. Even so, appellant acknowledges there are exceptions to the rule, such as deliberate avoidance situations or, even like here, where the witness's trial testimony is not exclusively statements of a lack of recollection.

Thus, *People v. Sam* " 'stands for no more than the proposition that "prior statements are not admissible to impeach a witness whose answers to questions are *exclusively* of the 'I-don't-remember' variety." ' " (*People v. Fierro* (1991) 1 Cal.4th 173, 222, original italics, overruled on another ground in *People v. Thomas* (2012) 54 Cal.4th 908, 941.) Put another way, the *People v. Sam* rule does not apply to S.S., a 13-year-old girl testifying under stress and embarrassment about events that occurred seven years earlier and being asked about her prior interview statements, parts of which she could not remember.[12] Because S.S. could not recall all the details of those statements, the officer's testimony recounting what S.S. told the interviewer regarding which body part appellant penetrated her with was sufficiently inconsistent in effect to qualify as a prior inconsistent statement.

But even assuming the statements were inadmissible under section 1235, their introduction was harmless since the focus of the officer's testimony was whether S.S. said she was penetrated by a penis or a finger, and the jury was obviously not convinced by the penis theory because they acquitted appellant of the sexual intercourse charge.

---

[12] The interview took place on January 21, 2020. S.S.'s trial testimony was on October 15, 2020.

If there is state law error, we reverse a conviction only if it is reasonably probable the defendant would have obtained a more favorable result absent the error. (*People v. Hernandez* (2011) 51 Cal.4th 733, 745, citing *People v. Watson* (1956) 46 Cal.2d 818, 837.) Improper admission of prior statements for their truth under section 1235 is state law error and subject to *Watson* harmless error review. (*People v. Arias* (1996) 13 Cal.4th 92, 153.)

S.S.'s testimony provided evidence from which a reasonable jury could find that appellant penetrated her with some kind of object. The key piece of evidence in this case is S.S.'s pain. She stated that she had sharp pain in her "lower part" that "stayed around" afterwards. Moreover, she cried out for her mother when she felt the pain, something she did not mention doing during the earlier touching and rubbing events. Significantly, there was no equivocation about the severity, the nature, and the location of her pain. Her ambiguous responses to the prosecutor's inartful questioning about whether something touched her vagina or went inside it, when viewed in conjunction with her other responses, could reasonably lead the jury to conclude there was indeed penetration, and that it was this penetration that caused her "sharp pain."

Furthermore, the jury apparently rejected or disregarded the officer's testimony. By finding appellant not guilty on the sexual intercourse count, but convicting him on the sexual penetration count, they believed S.S. had been penetrated by something that caused her severe pain but were not convinced it was a penis.[13] Thus, even if the officer had not testified, and based solely on the other evidence, it is not reasonably probable that appellant would have received a more favorable outcome on the penetration and lewd act

---

[13] As noted, *ante*, for the Penal Code section 288.7, subdivision (a) penetration charge, the jury could convict even if "it is not known what object penetrated the opening." (CALCRIM No. 1128.) Such unknown object could have been either a finger or penis. (*Ibid.*) The acquittal on the sexual intercourse charge and conviction on the penetration charge suggests this is exactly what the jury did here.

counts had the section 1235 evidence been excluded. (*People v. Watson*, *supra*, 46 Cal.2d at p. 836.)

## III. Trial Counsel's Failure to Object to the Prosecutor's Closing Argument

Finally, appellant contends the prosecutor committed reversible misconduct in her closing argument, and because counsel failed to object, she was constitutionally ineffective. We are not persuaded.

### A. Additional Background

In the prosecutor's initial closing argument, she told the jury:

> "So my burden is proof beyond a reasonable doubt. It's proof that leaves you with an abiding conviction in the truth of the charges. That's a week from now, a month from now, 10 years from now you're left with a strong, lasting belief in the truth of the charges...."

This accurately paraphrased the jury instruction, and appellant does not claim otherwise. (See CALCRIM No. 220.)

Defense counsel responded:

> "Now everybody's talked a lot the [*sic*] about this high standard we have of proof in criminal jury trials, this beyond a reasonable doubt. And as [the prosecutor] was saying, it does require you to have an abiding conviction that the charges are true when you walk out of here, 10 minutes, 10 days, 10 years.... [¶] Let's picture you sitting around, talking to friends or family about how I did my first jury service the other day. And actually you're excited about talking about it. So I'd ask you to think about if you're in that position again, if you've made your decision on what you decide on guilty or not guilty, do you think you're going to feel the same way next year? Is it going to be the same way five years down the road?"

In her rebuttal, the prosecutor began by saying:

> "Now proof beyond a reasonable doubt is not 'I'd like to see more.' You just have to judge the case on the evidence that you have. It's not 100 percent doubt. It's not beyond all possible doubt. It's not what if this, what if that, what if we speculate about more things we want. You have to judge it on what you have. So proof beyond a reasonable doubt is a reasonable doubt."

20.

Again, this sensibly paraphrases a correct statement of reasonable doubt, and again, appellant does not contend otherwise.  The prosecutor continued:

> "And now this burden isn't because it's this case.  This burden is the same burden if you're in traffic court fighting for a speeding ticket.  It's the same burden if somebody's charged with driving under the influence of alcohol, a misdemeanor.  It's the same burden if you're charged with first-degree murder facing, you know, life without parole.  Same burden from the lowest crime to the highest crime.  [¶] *It's not a tough burden.*  It's not, you know, insurmountable.  It's not unachievable.  It's not unobtainable.  It's the same for traffic up to murder, and it's same in Merced, Stanislaus, L.A., San Diego.  It's the same in California, New York, Texas, Florida, throughout the United States, every county, every state.  Jury's [*sic*] reach verdicts on that burden *all the time.*  Maybe not so much in the pandemic because things are a lot slower, but it's a burden that you can—that you've met and that you can find the evidence meets.  [¶]  It's proof beyond a reasonable doubt.  It's not proof beyond everything you can think of.  It's reasonable a week from now, a month from now, 10 years from now.  You're left with an abiding conviction in the truth of the charges.  That's a strong, lasting belief that you believe [appellant] did things to [S.S.] that meet the elements of those crimes.  It's not, you know, what's she wearing?  It's not, was her mom at work, or at the store?  It's that you know and you're going to believe 10 years from now that [appellant] molested [S.S.] when she lived with him from 2013 to 2014."  (Italics added.)

As noted, defense counsel lodged no objections to the prosecutor's closing arguments, and appellant now contends that her failure to object to portions of those arguments constituted constitutionally ineffective assistance of  counsel.  Specifically, appellant isolates the two italicized passages above and, when examined outside their context, insists they constitute prejudicial prosecutorial misconduct of such a degree that his trial counsel constitutionally failed in her representation by not objecting.

### *B.*     *Analysis*

"An ineffective assistance claim has two components:  A [defendant] must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." (*Wiggins v. Smith* (2003) 539 U.S. 510, 521; *Strickland v. Washington* (1984) 466 U.S.

21.

668, 687 (*Strickland*).) Both components "are mixed questions of law and fact subject to our independent review." (*In re Gay* (2020) 8 Cal.5th 1059, 1073.)

"On direct appeal, a finding of deficient performance is warranted where '(1) the record *affirmatively discloses* counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation.' [Citation.] '[W]here counsel's trial tactics or strategic reasons for challenged decisions do not appear on the record, we will not find ineffective assistance of counsel on appeal unless there could be no conceivable reason for counsel's acts or omissions.' " (*People v. Johnsen* (2021) 10 Cal.5th 1116, 1165, italics added; *People v. Cunningham* (2001) 25 Cal.4th 926, 1003 ["deficient performance [must be] based upon the four corners of the record"].)[14]

In addition, "[t]here are countless ways to provide effective assistance [and] [e]ven the best criminal defense attorneys would not defend a particular client in the same way." (*Strickland*, *supra*, 466 U.S. at p. 689.) Rarely is there only one reasonable strategy for a defense attorney to adopt when representing a client in a criminal case. That other strategies might exist, or might appear in hindsight potentially to have stood a better chance at success, does not make the strategy employed unreasonable or counsel's performance deficient. (See *Maryland v. Kulbicki* (2015) 577 U.S. 1, 4; *People v. Jennings* (1991) 53 Cal.3d 334, 379–380.)

"When applying this standard, we ask whether any reasonably competent counsel would have done as counsel did.… Judicial review of counsel's performance is deferential; to establish deficient performance, the defendant 'must overcome the presumption that, under the circumstances, the challenged action "might be considered

---

[14]    "Rarely is ineffective assistance of counsel established on appeal since the record usually sheds no light on counsel's reasons for action or inaction." (*People v. Woodruff* (2018) 5 Cal.5th 697, 736.) Such considerations are normally more properly brought on habeas corpus. (See *People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266–267.)

sound trial strategy." ' " (*In re Gay*, *supra,* 8 Cal.5th at p. 1073; *Harrington v. Richter* (2011) 562 U.S. 86, 105 ["standard for judging counsel's representation is a most deferential one"]; *Bell v. Cone* (2002) 535 U.S. 685, 702 [same].)  And because deciding whether to object is inherently a tactical decision, the failure to do so will rarely establish ineffective assistance of counsel.  (*People v. Johnsen*, *supra*, 10 Cal.5th at p. 1166; *People v. Hillhouse* (2002) 27 Cal.4th 469, 502.)

"To establish deficient performance, a [defendant] must *demonstrate* that counsel's representation 'fell below an objective standard of reasonableness,' " as measured by " 'prevailing professional norms.' " (*Wiggins v. Smith*, *supra*, 539 U.S. at p. 521, italics added.)  Here, appellant has made no such demonstration; he merely asserts it in a conclusory fashion.  Appellant has not met the first prong of the test.

As for the prejudice component of the test, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." (*Strickland*, *supra*, 466 U.S. at p. 693.)  Rather, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Id.* at p. 694.)

Moreover, " 'we "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements.' " (*People v. Covarrubias* (2016) 1 Cal.5th 838, 894.)  "For a prosecutor's remarks to constitute misconduct, it must appear reasonably likely *in the context of the whole argument and instructions* that ' "the jury understood or applied the complained-of comments in an improper or erroneous manner." ' " (*People v. Winbush* (2017) 2 Cal.5th 402, 480, italics added.)

Appellant argues:  "[T]he prosecutor trivialized the reasonable doubt standard by telling the jurors that other juries reach it 'all the time' and that 'its [*sic*] not a tough standard.'  She implied to the jury that its task was less rigorous than required by the law

of reasonable doubt.  Her argument tried to lead to jurors into a mental state where they treated the job in a perfunctory manner, rather than as one where they must evaluate the evidence to determine whether it met the high standard required by the law."  Not so.

First, there is no indication here the prosecutor's remarks about the burden of proof so "infect[ed] the trial with such unfairness as to make [appellant's] conviction a denial of due process [citation] or to render the verdicts unreliable."  (*People v. Kipp* (2001) 26 Cal.4th 1100, 1130.)  Similarly, there is nothing in this record showing a reasonable *probability* the jury would have come to a different result had trial counsel objected.

When viewed in its proper context, everything the prosecutor said was correct in terms of her explanations of reasonable doubt.  Appellant's myopic focus on the words "It's not a *tough* burden," or that juries are able to find the burden satisfied "*all the time*," ignores what the prosecutor was actually saying:  That the burden of proof is not one of proof beyond all possible doubt, because that would be impossible; that it applies equally from a traffic case to a capital murder case; and that juries do in fact regularly determine cases have been proven beyond a reasonable doubt.

Standing alone, the phrase "not a tough burden" is a poor choice of words because it could be construed as meaning "easy."  However, when viewed in its context, the prosecutor was not implying the jury's task was easy, but rather that it was not impossible because she conjoined it with descriptions of "not … insurmountable," "not unachievable," and "not unobtainable."

Second, appellant's claim the prosecutor trivialized the reasonable doubt standard by telling the jurors that other juries reach it "all the time" is also misplaced, and the cases appellant cites in support are not on point.[15]  The fact other juries—in every kind of

---

[15] The prosecutor here did not compare the reasonable doubt standard to everyday decisions, as in *People v. Johnson* (2004) 119 Cal.App.4th 976, 982, 985 [traffic decisions] and *People v. Nguyen* (1995) 40 Cal.App.4th 28, 35–36 [decisions whether to

criminal case, and all over the nation—are able to reach guilty verdicts merely goes to her argument that the burden of proof is not so unsurmountable as to be unattainable. This does not trivialize the burden of proof.

Furthermore, the prosecutor repeatedly reminded the jury that proof beyond a reasonable doubt is "proof that leaves you with an abiding conviction in the truth of the charges," and proof where "[y]ou're left with an abiding conviction in the truth of the charges" "a week from now, a month from now, 10 years from now." And defense counsel agreed with this characterization in her closing argument.

Viewed as a whole, the prosecutor's closing remarks regarding the burden of proof did not misstate the law. As such, it was not unreasonable for defense counsel not to object because the meritless objection would have been properly overruled. (See *People v. Ochoa* (1998) 19 Cal.4th 353, 463; *People v. Anderson* (2001) 25 Cal.4th 543, 587 ["Counsel is not required to proffer futile objections."].)

Finally, the trial court admonished the jury that the attorneys' statements did not constitute evidence. (See CALCRIM No. 222.) We presume the jury followed the court's instructions. (*People v. Martinez* (2010) 47 Cal.4th 911, 957.) Indeed, that presumption is a crucial underpinning of our constitutional system of trial by jury. (*People v. Yeoman* (2003) 31 Cal.4th 93, 139.) Appellant has provided nothing to rebut that presumption and there is nothing in the record to indicate the jury failed to heed the court's admonishment in this case.

"A mere failure to object to argument seldom establishes counsel's incompetence." (*People v. Thomas* (1992) 2 Cal.4th 489, 531.) And "this case is no exception." (*Ibid.*) In light of the trial court's cautionary instructions and appellant's

change lanes and whom to marry]. Nor did she attempt to quantify the standard as in *People v. Katzenberger* (2009) 178 Cal.App.4th 1260, 1267–1268 [prosecutor's argument that 6 of 8—i.e., 75%—puzzle pieces depicting a photo of the Statute of Liberty was enough to conclude beyond a reasonable doubt it was Liberty].

ability to fully challenge S.S. and her mother's testimony on cross-examination, we discern neither prejudice nor a denial of his right to a fair trial based solely on two isolated phrases in the prosecutor's final closing argument. Put simply, it is not reasonably probable the result would have been different had trial counsel objected to the prosecutor's remarks. Thus, appellant has failed to meet the second prong of the test as well as the first. His ineffective assistance of counsel claim therefore fails.

## **DISPOSITION**

The judgment is affirmed.


                                        DE SANTOS, J.

WE CONCUR:


MEEHAN, ACTING P. J.


SNAUFFER, J.